IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal Action No. 3:08cr488

SAMI BROWN,

Petitioner.

## REPORT AND RECOMMENDATION

This matter comes before the Court for an evidentiary hearing and a Report and Recommendation as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") by Sami Brown, a federal prisoner. On October 22, 2012, the Court held an evidentiary hearing. The parties submitted post-hearing proposed findings of fact and conclusions of law (Docket Nos. 281, 282), and the matter is ripe for disposition. For the following reasons, the Court RECOMMENDS that Brown's claim of ineffective assistance of counsel based on his attorney's failure to file an appeal as instructed be DISMISSED and that the § 2255 motion be DENIED.

## I. Factual and Procedural Background

On November 6, 2008, a federal grand jury indicted Brown, along with eight co-defendants, in a four-count indictment. (Docket No. 1.) Count One charged Brown and his co-defendants with conspiracy to distribute and possess with the intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. Counts Two, Three, and Four did not charge Brown. (Docket No. 1.) The district court appointed Reginald Barley to represent Brown throughout his criminal proceedings. (Docket No. 60.) (Oct. 22, 2012 Evid. Hr'g Tr. ("Evid. Hr'g Tr.") 55:11-13.) (Docket No. 278.)

1

On May 4, 2009, the Honorable Richard L. Williams arraigned Brown. (Docket No. 62.) On July 21, 2009, Brown pled guilty, with a written plea agreement and statement of facts, to Count One of the Indictment. (Docket Nos. 130, 131.) (Evid. Hr'g Tr. 10:23-25.) On October 28, 2009, the Honorable Robert E. Payne sentenced Brown to the statutory mandatory minimum 120 months imprisonment, entering judgment on October 29, 2009. (Docket No. 175.) (Oct. 28, 2009 Sent. Hr'g Tr. ("Sent. Hr'g Tr.") 10:17-24.) (Docket No. 274.) Brown did not file an appeal.

On November 3, 2010, the Court received Brown's § 2255 motion.[1] (Docket No. 201.) Brown's § 2255 motion raises only one claim: that he suffered ineffective assistance of counsel as a result of his attorney's failure to file a notice of appeal as directed. (Docket No. 201.) By Memorandum Opinion and Order entered May 1, 2012, the district court denied the United States's Motion to Dismiss Brown's § 2255 motion and referred Brown's claim of ineffective assistance of counsel for failing to file a requested notice of appeal to the undersigned Magistrate Judge for an evidentiary hearing. (Docket Nos. 249, 250.)

This Court ordered that counsel be appointed to Brown and that an evidentiary hearing be scheduled as to Brown's § 2255 claim: whether trial counsel rendered ineffective assistance by failing to file a requested notice of appeal. (Docket Nos. 257, 263.) On October 22, 2012, the Court held an evidentiary hearing.

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked

---

[1] On November 8, 2010, the Court ordered that it would construe Brown's second §2255 motion, received November 3, 2010, as a motion to amend his original § 2255 motion filed October 20, 2010. (Docket No. 200.) The Court ordered that the second § 2255 motion supplants completely the original documents. (Docket No. 200.)

2

jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393-94, 409 n.15 (4th Cir. 2004).

### III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on the record, as well as the testimony and exhibits submitted at the evidentiary hearing.

A. **Brown's Guilty Plea**

1. Brown met with Barley seven times prior to entering his guilty plea on July 21, 2009. (Evid. Hr'g Tr. 76:8-13.) Brown and Barley met to discuss the pending charges and Brown's arraignment and detention hearing. (Evid. Hr'g Tr.76:17-21.) Next, Brown and Barley met with a DEA agent. (Evid. Hr'g Tr.76:22-23.) Brown and Barley met on several occasions to discuss the government's discovery. (Evid. Hr'g Tr.76:24-77:5.) Additionally Brown and Barley met to discuss a potential plea. (Evid. Hr'g Tr.77:6-7.)

2. After consulting with Barley, Brown decided to plead guilty to conspiracy to distribute crack cocaine. (Evid. Hr'g Tr.9:13-15.)

3

3. At almost every meeting, Brown and Barley discussed the differences in penalties associated with powder cocaine and crack cocaine charges. (Evid. Hr'g Tr. 77:20-25.)

4. On July 21, 2009, the Honorable Robert E. Payne, substituting for the Honorable Richard L. Williams, conducted Brown's plea colloquy, during which Brown pled guilty to Count One of the Indictment. (Evid. Hr'g Tr. 10:3-5.)

5. Brown signed the written plea agreement and statement of facts at the plea hearing. (Evid. Hr'g Tr. 33:9-11.)

6. Brown signed the written plea agreement, indicating that he had carefully read and understood the plea agreement, had reviewed it with his attorney, and voluntarily agreed to it. (Plea Agreement 10.) During the Evidentiary Hearing, Brown testified that he did not read every part of the written plea agreement, despite signing the plea agreement that indicated that he had read and reviewed every part of it. (Evid. Hr'g Tr. 33:17-23.)

7. Brown also signed the statement of facts, indicating that he had reviewed it with his attorney and agreed to the truthfulness and correctness of the stated facts. (Statement of Facts 2.) In the statement of facts, Brown admitted that the total weight for which Brown was responsible was at least fifty grams of cocaine base, but less than 150 grams of cocaine base. (Statement of Facts 1.)

8. The plea agreement listed the penalties associated with his charge, including "a minimum term of imprisonment of ten years and a maximum of life." (Plea Agreement ¶ 1.) The plea agreement made clear that no agreement as to sentencing existed, that the Court would determine his sentence guided by the United States Sentencing Guidelines[2] and 18 U.S.C. § 3553(a), and that the Court could depart upward or downward from the Sentencing Guidelines if appropriate. (Plea Agreement ¶ 5.)

---

[2] U.S. Sentencing Guidelines Manual (2008).

4

9. The plea agreement contained a waiver of appeal provision, stating "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea Agreement ¶ 6.) Brown confirmed that he knew that he waived his right to appeal once he pled guilty. (Evid. Hr'g Tr. 35:8-13.)

10. During the evidentiary hearing, the Court asked Brown, "So what did you think that meant that you waived your right to appeal?" (Evid. Hr'g Tr. 35:18-19.) Brown responded, "That I can't appeal my case or anything like that." (Evid. Hr'g Tr. 35:20-21.)

11. The plea agreement also contained a cooperation agreement, in which Brown agreed to cooperate fully and truthfully with the United States and provide information regarding criminal activity. (Plea Agreement ¶¶ 12-15.) The United States reserved the right to seek any downward departure in sentence based on his cooperation. (Plea Agreement ¶ 16.) At the evidentiary hearing, Brown informed the Court that he did not read the portion of his plea agreement requiring him to provide full, complete, and truthful cooperation. (Evid. Hr'g Tr. 39:9-12; 40:2-7.) Brown did not recall reading the portion of his plea agreement that granted the government sole discretion to determine whether a Rule 35[3] sentence reduction was appropriate. (Evid. Hr'g Tr. 41:18-19.) Brown never received a sentence reduction and did not testify against anyone, even though testifying against family members was not a requirement under his cooperation agreement. (Evid. Hr'g Tr. 74:8-16; 78:17-19.)

12. Brown then entered a plea of guilty to Count One of the Criminal Information.

---

[3] "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1).

## B. Brown's Sentencing Hearing

13. Brown's Presentence Investigation Report ("PSR") concluded that Brown's offense level totaled 27, that he fell within criminal history category III, that his applicable guideline range was 87-108 months, and that his restricted guideline range was 120 months of imprisonment. (PSR Worksheet D.)

14. The PSR notes that neither the United States nor Brown filed any objections to the PSR. (Addendum to PSR A-1.)

15. On October 28, 2009, Judge Payne presided over Brown's sentencing hearing. Brown confirmed that he had reviewed the PSR and had been over it with Barley. (Sent. Hr'g Tr. 3:1-6.) Brown stated that he had no objections to the PSR. (Sent. Hr'g Tr. 3:7-10.) The Court announced that the PSR would be accepted, adopted, and filed. (Sent. Hr'g Tr. 3:11-13.)

16. During argument as to sentencing, the Government recommended a sentence at the statutory mandatory minimum amount of 120 months. (Sent. Hr'g Tr. 3:17-19.) Barley also argued in favor of a sentence of 120 months. (Sent. Hr'g Tr. 3:21-4:2.) Barley and the Court discussed Brown's competency, but Barley ultimately confirmed to the Court that Brown was competent for the purposes of his guilty plea and sentence. (Sent. Hr'g Tr. 9:3-8.)

17. Brown testified at the evidentiary hearing that, despite not understanding what Barley said at the sentencing hearing and not understanding several pages of his Plea Agreement, he did not tell Judge Payne that he did not understand. (Evid. Hr'g 46:12-20.)

18. Prior to imposing sentence, Judge Payne gave Brown an opportunity to address the Court, "Mr. Brown, do you have anything to say before sentence is imposed? If you'll speak up, I'll hear you now." (Sent. Hr'g Tr. 10:5-7.) Brown responded, "I said I want to say sorry for

what I done, and as soon as I get out, I get a good job and take care of my son." (Sent. Hr'g Tr. 10:12-14.)

19. After noting the advisory nature of the guidelines, considering the factors listed in 18 U.S.C. § 3553(a), and finding that a sentence within the guidelines was not available because of the mandatory minimum, the Court sentenced Brown to 120 months of imprisonment. (Sent. Hr'g Tr. 10:17-24.)

20. At the conclusion of the sentencing, the Court stated to Brown:

> All right, Mr. Brown, I'm not suggesting there's a reason for appeal or right of appeal, but any appeal that is to be taken must be taken by filing a written notice of appeal with the clerk of the court in ten days time from the date of the judgment of the court. If that's not done in that way, in that time, and in that place, then whatever right of appeal that may exist is lost forever.

(Sent. Hr'g Tr. 12:14-21.) Brown confirmed that he understood. (Sent. Hr'g Tr. 12:22.)

### C. Brown's Account of His Communications with Barley

21. At the evidentiary hearing, Brown testified that he and Barley met prior to his sentencing but that he could not recall what they discussed. (Evid. Hr'g Tr. 13:21-14:1.)

22. Brown testified that he and Barley met after sentencing and that he specifically asked Barley to file an appeal. (Evid. Hr'g Tr. 14:3-9.) Brown testified that Barley answered that he would file an appeal. (Evid. Hr'g Tr. 14:12-14.)

23. Brown testified that he tried to call Barley collect in September 2010 but that he received no answer. (Evid. Hr'g Tr. 14:18-21; 30:25-31:7.)

7

24. Brown testified that he wrote Barley in September 2010 regarding the status of the appeal.[4] (Evid. Hr'g Tr. 14:22-24; 30:7-13; Sept. 3, 2010 Letter from Sami Brown to Reginald Barley ("Sept. 3, 2010 Letter") (Docket No. 279).) Brown stated he never received a response from Barley, prompting Brown to file his § 2255 motion. (Evid. Hr'g Tr. 15:5-7.)

25. Brown testified that he wrote a letter to Barley prior to sentencing regarding his concerns about the guidelines. (Evid. Hr'g Tr. 15:8-11.)

26. Brown testified he wrote Barley twice, before his sentencing and after sentencing. (Evid. Hr'g Tr. 16:2-6.)

### D. Barley's Account of His Communications with Brown

27. During his representation of Brown, Barley met with Brown twelve (12) times. (Evid. Hr'g Tr. 56:15-16.)

28. Barley testified that Brown wanted a lesser sentence based on the crack to powder ratio, (Evid. Hr'g Tr. 78:3-6), and that, as a peripheral participant in the conspiracy relative to his brothers, Brown struggled with the concepts of foreseeability, relevant conduct, and the drug quantity that would be attributable to him under Sentencing Guidelines. (Evid. Hr'g Tr. 72:18-73:8.)

29. Barley testified that he received a letter from Brown after meeting with Brown to discuss the PSR in which Brown expressed concerns about the sentence he faced. (Evid. Hr'g Tr. 63:15-21.) Barley testified that he discussed with Brown the mandatory minimum and that there was nothing Barley could do in the face of the mandatory minimum. (Evid. Hr'g Tr. 63:22-24.)

---

[4] During the evidentiary hearing, Brown stated that he had copies of two letters he sent to Barley. (Evid. Hr'g Tr. 48:3-4.) The Court ordered Brown to file those letters no later than November 9, 2012. (Evid. Hr'g Tr. 84:2-3.) On November 9, 2012, Brown filed only one letter, dated September 3, 2010. (Docket No. 279.)

8

30. After sentencing on October 28, 2009, Barley met with Brown in the courthouse lockup. (Evid. Hr'g Tr. 64:6-9.) Barley wished Brown well. Barley testified that no specific conversation regarding Brown's right to appeal occurred. (Evid. Hr'g Tr. 64:12-19.)

31. Barley said Brown never asked him to file an appeal. (Evid. Hr'g Tr. 78:3-4.)

32. Barley testified that he would have filed a notice of appeal, with the necessary request to withdraw as counsel, had Brown requested that Barley file a notice of appeal of the October 28, 2009 judgment. (Evid. Hr'g Tr. 66:5-12.)

33. Barley testified that he first heard from Brown following sentencing when Brown filed his § 2255 motion. (Evid. Hr'g Tr. 67:18-19.) Barley testified that he never received any letters from Brown after sentencing and received nothing from Brown in September 2010. (Evid. Hr'g Tr. 67:16-23.)

### E. Barley's Version of Events Is More Credible than Brown's Version

34. Having considered the above and having weighed the credibility of the witnesses, the Court finds that Brown never expressly requested that Barley file an appeal of his case and never expressed an interest in appealing his case. Brown's testimony otherwise lacks credibility.

35. The record demonstrates that Brown did not raise or make any objections to the PSR prior to or at the October 28, 2009 sentencing hearing. The PSR clearly indicates that Brown faced a statutory mandatory minimum penalty of 120 months.

36. Brown signed the Plea Agreement with ample time to review it with counsel, and he did not raise any concerns with Judge Payne at sentencing about his lack of understanding of the terms. When asked by Judge Payne at his sentencing whether he had anything to say, Brown merely stated that he was sorry

37. Although Barley initially had concerns regarding Brown's competency, he and Judge Payne ultimately concluded and accepted that Brown was competent to plead guilty and proceed with sentencing. Nothing during this Court's evidentiary hearing suggested that Brown lacked competency.

38. Barley's frequent meetings with Brown, Barley's willingness to explain complex legal concepts, and Barley's exploration of competency lay a clear record of responsiveness and strong advocacy on Brown's behalf.

39. Brown understood that he faced a mandatory minimum penalty of 120 months imprisonment. Barley discussed the crack-powder cocaine sentencing ratio at every meeting with Brown. Barley also advised Brown regarding a possible sentence reduction under Rule 35.

40. Ultimately, the Court finds Barley's version of events as to whether Brown requested an appeal to be more credible and supported by the contemporaneous record.

## IV. Analysis

### A. Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal

The standard set forth by the Supreme Court of the United States in *Strickland v. Washington* governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that the Sixth Amendment[5] guaranteed a criminal defendant's right to reasonably effective assistance of counsel. *Id.* at 687. To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must demonstrate actual prejudice from the deficiency. *Id.* at 694.

---

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

10

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal. *See* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. This determination must take into account "all the information counsel knew or should have known." *Id.*

If a consultation about appeal has occurred, counsel performs deficiently "only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right to appeal] and harmful to the client's interests."[6] *Poindexter*, 492 F.3d at 273.

---

[6] The Court notes that a split of authority exists on the issue of whether a lawyer is *per se* ineffective when the lawyer fails to file a notice of appeal despite his client's wishes, even when the defendant has waived his right to appeal and has no meritorious issues to raise. A minority of circuits hold that counsel is not *per se* ineffective for honoring a client's written waiver of appeal instead of the client's later oral instruction to appeal. *See, e.g., Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008); *see also United States v. Arevalo*, No. 5:07-153-JMH-JGW, 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). Recognizing that this non-binding precedent exists, this Court nonetheless adheres to the principles announced by the Fourth Circuit. *See United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484. "Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (quoting *Flores-Ortega*, 528 U.S. at 486).

### B. Brown's Claim Fails

#### 1. Brown Did Not Timely Instruct Barley to File an Appeal

The record demonstrates that Brown did not instruct Barley to file an appeal within the ten-day period following his sentencing. The testimony that Brown asked counsel to file an appeal lacks credibility for the reasons discussed above. *See supra* Part III.E. Conversely, Barley testified credibly that Brown never instructed him to file an appeal in a timely manner. The contemporaneous record supports Barley's testimony.

Despite purporting to check on the status of his appeal, Brown's September 3, 2010 letter to Barley does not establish that Brown timely instructed Barley to file an appeal within ten days of his sentencing. Brown wrote to Barley almost one full year after his sentencing, long after the expiration of his time to appeal. During Brown's sentencing, Judge Payne specifically told Brown that a failure to note the appeal as directed would result in the loss of appellate rights.

Brown confirmed that he understood this. Brown did not communicate with Barley after his sentencing and prior to his September 3, 2010 letter regarding any desire to appeal, and certainly did not communicate with Barley about any desire to appeal within the ten day period.

### 2. Barley Had No Duty to Consult with Brown Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Barley had a duty to consult with Brown about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* at 480. If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id.*

The Court finds that Barley had no duty to consult with Brown about an appeal. First, the record demonstrates that a rational defendant in Brown's position would not have pursued an appeal. After many meetings with Barley, Brown pled guilty pursuant to a written plea agreement and waived his right to appeal any sentence within the statutory maximum or the manner in which that sentence was determined. Brown ultimately the mandatory statutory minimum sentence.

Brown did not object to the PSR during his sentencing hearing. Given the absence of any objections, Judge Payne adopted the guidelines as computed by the probation officer. The court sentenced Brown to the statutory mandatory minimum. Because Brown's applicable guideline range fell below the mandatory statutory minimum, the sentencing court had no choice but to sentence Brown to the mandatory 120 months. Judge Payne selected Brown's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Based on these considerations, Brown cannot demonstrate that a rational defendant would have wanted to appeal his sentence.[7]

Brown likewise has failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. Brown's testimony that he told Barley to file an appeal lacks credibility. Barley, however, testified credibly that Brown never requested an appeal and did not express an interest in appealing. Accordingly, the Court finds that Barley had no duty to consult with Brown regarding an appeal.

Even though Barley had no constitutional duty to consult with Brown about an appeal, Barley followed "the better practice" and consulted with Brown immediately after sentencing. *Flores-Ortega*, 528 U.S. at 479. Specifically, Barley consulted Brown to determine if Brown had any questions. Nothing before this Court suggests that, during that consultation or within any applicable time period, Brown instructed Barley to file an appeal.

---

[7] Brown also fails to establish that a rational defendant would have wanted to appeal his sentence because, at least initially (and certainly for the ten days following his sentencing), Brown might have received a sentence reduction pursuant to Rule 35. Generally, appeals are not filed when a Rule 35 sentence reduction remains an option.

## V. Conclusion

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court DISMISS Brown's claim and DENY the § 2255 motion.

Brown is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order denying the motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and to the Honorable Robert E. Payne.

And it is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 1-3-13

15