

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:08CR488-6

SAMI BROWN,

    Petitioner.

### MEMORANDUM OPINION

Sami Brown, a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion"). (ECF No. 201.) Brown makes only the following claim: "Ineffective Assistance of Counsel for failing to file a requested notice of appeal." (§ 2255 Mot. 5.) The Court referred the claim to the Magistrate Judge. The matter is before the Court for review of the Magistrate Judge's proposed findings, set forth below in Parts I through V, and Brown's objections to those findings. The Court has reviewed the record, including the transcript of the evidentiary hearing conducted by the Magistrate Judge.

### I.  Factual and Procedural Background[1]

On November 6, 2008, a federal grand jury indicted Brown, along with eight co-defendants, in a four-count indictment. (Docket No. 1.) Count One charged Brown and his co-defendants with conspiracy to distribute and possess with the intent to distribute

---

[1] The Court removes the underlining in headings from the Report and Recommendation.

fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. Counts Two, Three, and Four did not charge Brown. (Docket No. 1.) The district court appointed Reginald Barley to represent Brown throughout his criminal proceedings. (Docket No. 60.) (Oct. 22, 2012 Evid. Hr'g Tr. ("Evid. Hr'g Tr.") 55:11-13.) (Docket No. 278.)

On May 4, 2009, the Honorable Richard L. Williams arraigned Brown. (Docket No. 62.) On July 21, 2009, Brown pled guilty, with a written plea agreement and statement of facts, to Count One of the Indictment. (Docket Nos. 130, 131.) (Evid. Hr'g Tr. 10:23-25.) On October 28, 2009, the Honorable Robert E. Payne sentenced Brown to the statutory mandatory minimum 120 months imprisonment, entering judgment on October 29, 2009. (Docket No. 175.) (Oct. 28, 2009 Sent. Hr'g Tr. ("Sent. Hr'g Tr.") 10:17-24.) (Docket No. 274.) Brown did not file an appeal.

On November 3, 2010, the Court received Brown's § 2255 motion. (Docket No. 201.) Brown's § 2255 motion raises only one claim: that he suffered ineffective assistance of counsel as a result of his attorney's failure to file a notice of appeal as directed. (Docket No. 201.) By Memorandum Opinion and Order entered May 1, 2012, the district court denied the United States's Motion to Dismiss Brown's § 2255 motion and referred Brown's claim of ineffective assistance of counsel for failing to file a requested notice of appeal to the undersigned Magistrate Judge for an evidentiary hearing. (Docket Nos. 249, 250.)

This Court ordered that counsel be appointed to Brown and that an evidentiary hearing be scheduled as to Brown's § 2255 claim: whether trial counsel rendered ineffective assistance by failing to file a requested notice of appeal. (Docket Nos. 257, 263.) On October 22, 2012, the Court held an evidentiary hearing.

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked

jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); White v. United States, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and reliability of other evidence. See United States v. Roane, 378 F.3d 382, 393-94, 409 n.15 (4th Cir. 2004).

### III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on the record, as well as the testimony and exhibits submitted at the evidentiary hearing.

### A. Brown's Guilty Plea

1. Brown met with Barley seven times prior to entering his guilty plea on July 21, 2009. (Evid. Hr'g Tr. 76:8-13.) Brown and Barley met to discuss the pending charges and Brown's arraignment and detention hearing. (Evid. Hr'g Tr. 76:17-21.) Next, Brown and Barley met with a DEA agent. (Evid. Hr'g Tr. 76:22-23.) Brown and Barley met on several occasions to discuss the government's discovery. (Evid. Hr'g Tr. 76:24-77:5.) Additionally Brown and Barley met to discuss a potential plea. (Evid. Hr'g Tr. 77:6-7.)

2. After consulting with Barley, Brown decided to plead guilty to conspiracy to distribute crack cocaine. (Evid. Hr'g Tr. 9:13-15.)

3. At almost every meeting, Brown and Barley discussed the differences in penalties associated with powder cocaine and crack cocaine charges. (Evid. Hr'g Tr. 77:20-25.)

4. On July 21, 2009, the Honorable Robert E. Payne, substituting for the Honorable Richard L. Williams, conducted Brown's plea colloquy, during

which Brown pled guilty to Count One of the Indictment. (Evid. Hr'g Tr. 10:3-5.)

5.    Brown signed the written plea agreement and statement of facts at the plea hearing. (Evid. Hr'g Tr. 33:9-11.)

6.    Brown signed the written plea agreement, indicating that he had carefully read and understood the plea agreement, had reviewed it with his attorney, and voluntarily agreed to it. (Plea Agreement 10.) During the Evidentiary Hearing, Brown testified that he did not read every part of the written plea agreement, despite signing the plea agreement that indicated that he had read and reviewed every part of it. (Evid. Hr'g Tr. 33:17-23.)

7.    Brown also signed the statement of facts, indicating that he had reviewed it with his attorney and agreed to the truthfulness and correctness of the stated facts. (Statement of Facts 2.) In the statement of facts, Brown admitted that the total weight for which Brown was responsible was at least fifty grams of cocaine base, but less than 150 grams of cocaine base. (Statement of Facts 1.)

8.    The plea agreement listed the penalties associated with his charge, including "a minimum term of imprisonment of ten years and a maximum of life." (Plea Agreement ¶ 1.) The plea agreement made clear that no agreement as to sentencing existed, that the Court would determine his sentence guided by the United States Sentencing Guidelines[2] and 18 U.S.C. § 3553(a), and that the Court could depart upward or downward from the Sentencing Guidelines if appropriate. (Plea Agreement ¶ 5.)

9.    The plea agreement contained a waiver of appeal provision, stating "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea Agreement ¶ 6.) Brown confirmed that he knew that he waived his right to appeal once he pled guilty. (Evid. Hr'g Tr. 35:8-13.)

10.   During the evidentiary hearing, the Court asked Brown, "So what did you think that meant that you waived your right to appeal?" (Evid. Hr'g Tr. 35:18-19.) Brown responded, "That I can't appeal my

---

[2] U.S. Sentencing Guidelines Manual (2008).

case or anything like that." (Evid. Hr'g Tr. 35:20-21.)

11. The plea agreement also contained a cooperation agreement, in which Brown agreed to cooperate fully and truthfully with the United States and provide information regarding criminal activity. (Plea Agreement ¶¶ 12-15.) The United States reserved the right to seek any downward departure in sentence based on his cooperation. (Plea Agreement ¶ 16.) At the evidentiary hearing, Brown informed the Court that he did not read the portion of his plea agreement requiring him to provide full, complete, and truthful cooperation. (Evid. Hr'g Tr. 39:9-12; 40:2-7.) Brown did not recall reading the portion of his plea agreement that granted the government sole discretion to determine whether a Rule 35[3] sentence reduction was appropriate. (Evid. Hr'g Tr. 41:18-19.) Brown never received a sentence reduction and did not testify against anyone, even though testifying against family members was not a requirement under his cooperation agreement. (Evid. Hr'g Tr. 74:8-16; 78:17-19.)

12. Brown then entered a plea of guilty to Count One of the Criminal Information.

### B. Brown's Sentencing Hearing

13. Brown's Presentence Investigation Report ("PSR") concluded that Brown's offense level totaled 27, that he fell within criminal history category III, that his applicable guideline range was 87-108 months, and that his restricted guideline range was 120 months of imprisonment. (PSR Worksheet D.)

14. The PSR notes that neither the United States nor Brown filed any objections to the PSR. (Addendum to PSR A-1.)

15. On October 28, 2009, Judge Payne presided over Brown's sentencing hearing. Brown confirmed that he had reviewed the PSR and had been over it with Barley. (Sent. Hr'g Tr. 3:1-6.) Brown stated that he had no objections to the PSR. (Sent. Hr'g Tr. 3:7-10.) The Court announced that the PSR would be

---

[3] "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1).

accepted, adopted, and filed. (Sent. Hr'g Tr. 3:11-13.)

16. During argument as to sentencing, the Government recommended a sentence at the statutory mandatory minimum amount of 120 months. (Sent. Hr'g Tr. 3:17-19.) Barley also argued in favor of a sentence of 120 months. (Sent. Hr'g Tr. 3:21-4:2.) Barley and the Court discussed Brown's competency, but Barley ultimately confirmed to the Court that Brown was competent for the purposes of his guilty plea and sentence. (Sent. Hr'g Tr. 9:3-8.)

17. Brown testified at the evidentiary hearing that, despite not understanding what Barley said at the sentencing hearing and not understanding several pages of his Plea Agreement, he did not tell Judge Payne that he did not understand. (Evid. Hr'g 46:12-20.)

18. Prior to imposing sentence, Judge Payne gave Brown an opportunity to address the Court, "Mr. Brown, do you have anything to say before sentence is imposed? If you'll speak up, I'll hear you now." (Sent. Hr'g Tr. 10:5-7.) Brown responded, "I said I want to say sorry for what I done, and as soon as I get out, I get a good job and take care of my son." (Sent. Hr'g Tr. 10:12-14.)

19. After noting the advisory nature of the guidelines, considering the factors listed in 18 U.S.C. § 3553(a), and finding that a sentence within the guidelines was not available because of the mandatory minimum, the Court sentenced Brown to 120 months of imprisonment. (Sent. Hr'g Tr. 10:17-24.)

20. At the conclusion of the sentencing, the Court stated to Brown:

> All right, Mr. Brown, I'm not suggesting there's a reason for appeal or right of appeal, but any appeal that is to be taken must be taken by filing a written notice of appeal with the clerk of the court in ten days time from the date of the judgment of the court. If that's not done in that way, in that time, and in that place, then whatever right of appeal that may exist is lost forever.

(Sent. Hr'g Tr. 12:14-21.) Brown confirmed that he understood. (Sent. Hr'g Tr. 12:22.)

## C. Brown's Account of His Communications with Barley

21. At the evidentiary hearing, Brown testified that he and Barley met prior to his sentencing but that he could not recall what they discussed. (Evid. Hr'g Tr. 13:21-14:1.)

22. Brown testified that he and Barley met after sentencing and that he specifically asked Barley to file an appeal. (Evid. Hr'g Tr. 14:3-9.) Brown testified that Barley answered that he would file an appeal. (Evid. Hr'g Tr. 14:12-14.)

23. Brown testified that he tried to call Barley collect in September 2010 but that he received no answer. (Evid. Hr'g Tr. 14:18-21; 30:25-31:7.)

24. Brown testified that he wrote Barley in September 2010 regarding the status of the appeal.[4] (Evid. Hr'g Tr. 14:22-24; 30:7-13; Sept. 3, 2010 Letter from Sami Brown to Reginald Barley ("Sept. 3, 2010 Letter") (Docket No. 279).) Brown stated he never received a response from Barley, prompting Brown to file his § 2255 motion. (Evid. Hr'g Tr. 15:5-7.)

25. Brown testified that he wrote a letter to Barley prior to sentencing regarding his concerns about the guidelines. (Evid. Hr'g Tr. 15:8-11.)

26. Brown testified he wrote Barley twice, before his sentencing and after sentencing. (Evid. Hr'g Tr. 16:2-6.)

## D. Barley's Account of His Communications with Brown

27. During his representation of Brown, Barley met with Brown twelve (12) times. (Evid. Hr'g Tr. 56:15-16.)

28. Barley testified that Brown wanted a lesser sentence based on the crack to powder ratio, (Evid.

---

[4] During the evidentiary hearing, Brown stated that he had copies of two letters he sent to Barley. (Evid. Hr'g Tr. 48:3-4.) The Court ordered Brown to file those letters no later than November 9, 2012. (Evid. Hr'g Tr. 84:2-3.) On November 9, 2012, Brown filed only one letter, dated September 3, 2010. (Docket No. 279.)

Hr'g Tr. 78:3-6), and that, as a peripheral participant in the conspiracy relative to his brothers, Brown struggled with the concepts of foreseeability, relevant conduct, and the drug quantity that would be attributable to him under Sentencing Guidelines. (Evid. Hr'g Tr. 72:18-73:8.)

29. Barley testified that he received a letter from Brown after meeting with Brown to discuss the PSR in which Brown expressed concerns about the sentence he faced. (Evid. Hr'g Tr. 63:15-21.) Barley testified that he discussed with Brown the mandatory minimum and that there was nothing Barley could do in the face of the mandatory minimum. (Evid. Hr'g Tr. 63:22-24.)

30. After sentencing on October 28, 2009, Barley met with Brown in the courthouse lockup. (Evid. Hr'g Tr. 64:6-9.) Barley wished Brown well. Barley testified that no specific conversation regarding Brown's right to appeal occurred. (Evid. Hr'g Tr. 64:12-19.)

31. Barley said Brown never asked him to file an appeal. (Evid. Hr'g Tr. 78:3-4.)

32. Barley testified that he would have filed a notice of appeal, with the necessary request to withdraw as counsel, had Brown requested that Barley file a notice of appeal of the October 28, 2009 judgment. (Evid. Hr'g Tr. 66:5-12.)

33. Barley testified that he first heard from Brown following sentencing when Brown filed his § 2255 motion. (Evid. Hr'g Tr. 67:18-19.) Barley testified that he never received any letters from Brown after sentencing and received nothing from Brown in September 2010. (Evid. Hr'g Tr. 67:16-23.)

### E. Barley's Version of Events Is More Credible than Brown's Version

34. Having considered the above and having weighed the credibility of the witnesses, the Court finds that Brown never expressly requested that Barley file an appeal of his case and never expressed an interest in appealing his case. Brown's testimony otherwise lacks credibility.

35. The record demonstrates that Brown did not raise or make any objections to the PSR prior to or at the October 28, 2009 sentencing hearing. The PSR clearly indicates that Brown faced a statutory mandatory minimum penalty of 120 months.

36. Brown signed the Plea Agreement with ample time to review it with counsel, and he did not raise any concerns with Judge Payne at sentencing about his lack of understanding of the terms. When asked by Judge Payne at his sentencing whether he had anything to say, Brown merely stated that he was sorry.

37. Although Barley initially had concerns regarding Brown's competency, he and Judge Payne ultimately concluded and accepted that Brown was competent to plead guilty and proceed with sentencing. Nothing during this Court's evidentiary hearing suggested that Brown lacked competency.

38. Barley's frequent meetings with Brown, Barley's willingness to explain complex legal concepts, and Barley's exploration of competency lay a clear record of responsiveness and strong advocacy on Brown's behalf.

39. Brown understood that he faced a mandatory minimum penalty of 120 months imprisonment. Barley discussed the crack-powder cocaine sentencing ratio at every meeting with Brown. Barley also advised Brown regarding a possible sentence reduction under Rule 35.

40. Ultimately, the Court finds Barley's version of events as to whether Brown requested an appeal to be more credible and supported by the contemporaneous record.


IV.  Analysis

A.  Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal

The standard set forth by the Supreme Court of the United States in Strickland v. Washington governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In Strickland, the Supreme Court held

that the Sixth Amendment[5] guaranteed a criminal defendant's right to reasonably effective assistance of counsel. Id. at 687. To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." Id. at 688. Second, the petitioner must demonstrate actual prejudice from the deficiency. Id. at 694.

In conjunction with Strickland, the decision of the Supreme Court in Roe v. Flores-Ortega governs ineffective assistance of counsel claims for failure to file a notice of appeal. See 528 U.S. 470 (2000). In Flores-Ortega, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480. This determination must take into account "all the information counsel knew or should have known." Id.

If a consultation about appeal has occurred, counsel performs deficiently "only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right

---

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

to appeal] and harmful to the client's interests."[6]
Poindexter, 492 F.3d at 273.

If the attorney received no express instruction
to file a notice of appeal, and no consultation has
occurred, a court must determine "whether counsel's
failure to consult with the defendant itself
constitutes deficient performance." Flores-Ortega,
528 U.S. at 478. The prejudice prong of Strickland
requires "that counsel's deficient performance must
actually cause the forfeiture of the defendant's
appeal. If the defendant cannot demonstrate that, but
for counsel's deficient performance, he would have
appealed, counsel's deficient performance has not
deprived him of anything, and he is not entitled to
relief." Id. at 484. "Thus, to prevail on an
ineffective assistance claim for failing to note an
appeal, a defendant need not 'demonstrate that his
hypothetical appeal might have had merit,' but rather
only that 'but for counsel's deficient conduct, he
would have appealed.'" Jiminez v. Vaughan, No.
3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5,
2008) (quoting Flores-Ortega, 528 U.S. at 486).

---

[6] The Court notes that a split of authority exists
on the issue of whether a lawyer is per se ineffective
when the lawyer fails to file a notice of appeal
despite his client's wishes, even when the defendant
has waived his right to appeal and has no meritorious
issues to raise. A minority of circuits hold that
counsel is not per se ineffective for honoring a
client's written waiver of appeal instead of the
client's later oral instruction to appeal. See, e.g.,
Nunez v. United States, 546 F.3d 450, 456 (7th Cir.
2008); United States v. Mabry, 536 F.3d 231, 240-42
(3d Cir. 2008); see also United States v. Arevalo, No.
5:07-153-JMH-JGW, 2010 WL 5391459, at *2 (E.D. Ky.
Dec. 22, 2010). Recognizing that this non-binding
precedent exists, this Court nonetheless adheres to
the principles announced by the Fourth Circuit. See
United States v. Poindexter, 492 F.3d 263, 265 (4th
Cir. 2007).

11

**B. Brown's Claim Fails**

### 1. Brown Did Not Timely Instruct Barley to File an Appeal

The record demonstrates that Brown did not instruct Barley to file an appeal within the ten-day period following his sentencing. The testimony that Brown asked counsel to file an appeal lacks credibility for the reasons discussed above. See supra Part III.E. Conversely, Barley testified credibly that Brown never instructed him to file an appeal in a timely manner. The contemporaneous record supports Barley's testimony.

Despite purporting to check on the status of his appeal, Brown's September 3, 2010 letter to Barley does not establish that Brown timely instructed Barley to file an appeal within ten days of his sentencing. Brown wrote to Barley almost one full year after his sentencing, long after the expiration of his time to appeal. During Brown's sentencing, Judge Payne specifically told Brown that a failure to note the appeal as directed would result in the loss of appellate rights. Brown confirmed that he understood this. Brown did not communicate with Barley after his sentencing and prior to his September 3, 2010 letter regarding any desire to appeal, and certainly did not communicate with Barley about any desire to appeal within the ten day period.

### 2. Barley Had No Duty to Consult with Brown Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Barley had a duty to consult with Brown about an appeal. Flores-Ortega, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's

wishes." Id. at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. Id. at 480. If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. Id.

The Court finds that Barley had no duty to consult with Brown about an appeal. First, the record demonstrates that a rational defendant in Brown's position would not have pursued an appeal. After many meetings with Barley, Brown pled guilty pursuant to a written plea agreement and waived his right to appeal any sentence within the statutory maximum or the manner in which that sentence was determined. Brown ultimately the mandatory statutory minimum sentence.

Brown did not object to the PSR during his sentencing hearing. Given the absence of any objections, Judge Payne adopted the guidelines as computed by the probation officer. The court sentenced Brown to the statutory mandatory minimum. Because Brown's applicable guideline range fell below the mandatory statutory minimum, the sentencing court had no choice but to sentence Brown to the mandatory 120 months. Judge Payne selected Brown's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. United States v. Evans, 526 F.3d 155, 161 (4th Cir. 2008). Based on these considerations, Brown cannot demonstrate that a rational defendant would have wanted to appeal his sentence.[7]

Brown likewise has failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. Brown's testimony that he told Barley to file an appeal lacks credibility. Barley, however, testified credibly that Brown never requested an appeal and did not express an interest in

---

[7] Brown also fails to establish that a rational defendant would have wanted to appeal his sentence because, at least initially (and certainly for the ten days following his sentencing), Brown might have received a sentence reduction pursuant to Rule 35. Generally, appeals are not filed when a Rule 35 sentence reduction remains an option.

appealing. Accordingly, the Court finds that Barley had no duty to consult with Brown regarding an appeal.

Even though Barley had no constitutional duty to consult with Brown about an appeal, Barley followed "the better practice" and consulted with Brown immediately after sentencing. <u>Flores-Ortega</u>, 528 U.S. at 479. Specifically, Barley consulted Brown to determine if Brown had any questions. Nothing before this Court suggests that, during that consultation or within any applicable time period, Brown instructed Barley to file an appeal.

## V. Conclusion

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court DISMISS Brown's claim and DENY the § 2255 motion.

(Report & Recommendation entered Jan. 3, 2013 (punctuation corrected).)

## VI. Standard Of Review

"The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing <u>Mathews v. Weber</u>, 423 U.S. 261, 270-71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and

legal—that are at the heart of the parties' dispute." Thomas v. Arn, 474 U.S. 140, 147 (1985). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," de novo review is unnecessary. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

## VII. Brown's Objections

### A. Objections To Factual Findings

In his First Objection, Brown objects to the conclusion in Finding of Fact 1 that he met with counsel on seven occasions prior to entry of his guilty plea. Instead, Brown claims he met with counsel four times during the course of counsel's representation. Brown also denies meeting with the DEA Agent.

In his Second and Third Objections, Brown offers information to clarify and correct Finding of Fact 2 and 12. In his Second Objection, Brown wishes to clarify Finding of Fact 2, and add that he decided to plead guilty because counsel advised him he could receive a longer sentence if he did not accept the Plea Agreement. In his Third Objection, Brown points out that Finding of Fact 12 inaccurately states that Brown pled guilty to Count One of the Criminal Information, however, Brown actually pled guilty to Count One of the Indictment charged by the grand jury.

A petitioner's objection to a factual finding should "direct the court to a factual finding which is both 'dispositive and contentious.'" Versatile v. Johnson, No. 3:09CV120, 2011 WL 5119259, at *31 n.26 (E.D. Va. Oct. 27, 2011) (quoting Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)). Brown's First, Second, and Third objections fail to comply with this requirement as none of the objections relate to dispositive findings. Moreover, for the First Objection, Barley testified that he counted seven meetings with Brown prior to the entry of the Plea Agreement, as reflected in his notes. (Oct. 12, 2012 Tr. 76.) Based upon Barley's credible testimony, the Court agrees with the Magistrate Judge's factual finding, and the First Objection will be overruled. Brown's Second Objection will be overruled as it objects to a finding of fact that is neither dispositive nor contentious. The Court will accept the Third Objection, however, finds the misstatement of fact regarding Brown pleading to a criminal information rather than an indictment irrelevant to the Magistrate Judge's conclusion that counsel was not constitutionally deficient.

In his Fourth Objection, Brown objects to the proposed finding in paragraph 34 that Brown expressed no desire to appeal and never expressed an interest in appealing his case. Brown objects because "Mr. Brown has a specific recollection of his conversation with Mr. Barley, while Mr. Barley had a more

general, vague recollection of their conversation." (Pet'r's Objs. ¶ A.4.) Thus, Brown argues Barley's inability to recall particular facts about this conversation undermines Barley's credibility. The Court disagrees. Barley unequivocally testified that Brown never directed him to file an appeal. (Oct. 22, 2012 Tr. 64, 78.) Brown's Fourth Objection will be overruled.

In his Fifth, Sixth, and Seventh Objections, Brown objects to the Magistrate Judge's conclusion that Brown possessed ample time to discuss the Plea Agreement with counsel and Brown understood the terms of his plea agreement. Brown objects, because "he never grasped the concepts that Mr. Barley attempted to explain." (Pet'r's Objs. ¶ A.6.) Barley testified that he and Brown discussed the mandatory statutory minimum more than once and Brown struggled with or "was not very accepting of the statutory minimum" sentence. (Oct. 12, 2012 Tr. 60, 62-64.) Counsel candidly admitted that Brown also struggled with "concepts of foreseeability, relevant conduct, and the drug quantity that would be attributable to him," (Report & Recommendation ¶ 28; Oct. 12, 2012 Tr. 72-73), however, as the Magistrate Judge concluded, counsel frequently met with Brown, willingly explained these concepts to him, and counsel concluded that Brown understood the agreement and was competent to plead guilty. Moreover, Brown, at no time prior to the evidentiary

hearing, articulated to the Court that he did not read or understand portions of the agreement or the terms of his guilty plea. (Report & Recommendation ¶¶ 17, 36.) Brown fails to direct the Court to record evidence that plausibly supports his assertions that (1) he did not have ample time to review the Plea Agreement, and (2) he failed to understand portions of the agreement, including the mandatory minimum sentence. Upon reviewing the record and transcript of the evidentiary hearing, the Court agrees with the Magistrate Judge that Brown's assertions that he failed to understand the terms of the Plea Agreement and the applicable mandatory minimum sentence, lack merit. Brown's Fifth, Sixth, and Seventh Objections will be overruled.

In his Eighth Objection, Brown objects to the conclusion that Brown's testimony was less credible than Barley's. Upon review of the record, and for the reasons stated by the Magistrate Judge, the Court agrees with the Magistrate Judge's assessment of the relative credibility of Barley and Brown. Brown's Eighth Objection will be overruled.

In his Ninth Objection, Brown "objects to the notation in footnote 4 that the Court only received one letter, as it implies that this was considered negatively in evaluating Mr. Brown's credibility." (Pet'r's Objs. ¶ A.9.) It is undisputed that Brown provided the Court with one letter. Thus, the

objection falls afoul of the requirement that a petitioner's objection must direct the Court to a "'dispositive and contentious'" finding. Versatile, 2011 WL 5119259, at *31 n.26 (quoting Miller, 50 F.3d at 380). Accordingly, Brown's Ninth Objection will be overruled.

## B. Objections To Analysis

Brown's objections to the Magistrate Judge's legal analysis consist of seven separately numbered paragraphs. In the majority of these paragraphs, Brown fails to identify a legal error in the Magistrate Judge's analysis. For example, in his First and Third Objections, Brown challenges the factual conclusion that he failed to direct Barley to appeal. For the reasons stated in the Report and Recommendation, the Court agrees that Brown failed to demonstrate that he directed Barley to file an appeal. Accordingly, Brown's First and Third Objections will be overruled.

In Brown's Sixth Objection, Brown objects to the Magistrate Judge's conclusion that Brown expressed no interest in appealing during the ten-day period. Brown contends that "he had . . . testified that he did expect Mr. Barley to appeal if the trafficking in firearm enhancement was not withdrawn. It was not, yet Mr. Barley never appealed the case." (Pet'r's Objs. ¶ B.6.) Again, Brown demonstrates no error in the Magistrate Judge's analysis.

First, habeas counsel fails to cite to any record evidence, as he must, to support the conclusion that Brown expected Barley to appeal if the firearm enhancement was not withdrawn. Second, if counsel believed the Report and Recommendation omitted a finding of fact based upon the record, counsel should have raised a factual objection to the Report and Recommendation identifying the omission. Because counsel failed to do so, the Court need not conduct a de novo review of the record for the Sixth Objection. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

Despite the inadequacy of the Sixth Objection, the Court has reviewed the transcript of the evidentiary hearing and finds it contains no evidence regarding Brown's expectations for an appeal based upon a firearm enhancement that was not withdrawn. For the reasons stated in the Report and Recommendation, the Court agrees that Brown failed to express any purported desire to appeal to counsel during the ten-day period. Accordingly, Brown's Sixth objection will be overruled.

In his Second, Fifth, and Seventh Objections, Brown asserts that because counsel failed to file an appeal as directed, counsel denied Brown the effective assistance of counsel. Because Brown fails to demonstrate by a preponderance of the evidence that he timely directed counsel to file an appeal,

these objections lack factual merit. Accordingly, Brown's Second, Fifth, and Seventh Objections will be overruled.

In his Fourth Objection, Brown objects to the Magistrate Judge's proposed conclusion of law that counsel had no duty to consult with Brown about pursuing an appeal. The Report and Recommendation details why, under the relevant precedent, counsel had no duty to consult with Brown about whether he wished to pursue an appeal. (Report and Recommendation 13-14 (citing Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000))). As explained by the Magistrate Judge, the Sixth Amendment requires counsel's consultation with the defendant about an appeal only "'when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel he was interested in appealing.'" (Id. at 13 (citing Flores-Ortega, 528 U.S. at 480) 13.) This Court agrees with the Magistrate Judge's conclusion that a rational defendant in Brown's position would not want to appeal, and that Brown failed to demonstrate that he expressed interest in appealing to Barley within the ten-day period.[8]

_____

[8] The record reflects that counsel had no duty to consult with Brown about whether to pursue an appeal because: (1) Brown failed to demonstrate any interest in appealing during the ten-day appeal period; (2) Brown received the sentence bargained for

21

As Brown fails to direct the Court to an error in the Magistrate Judge's analysis, his Fourth Objection will be overruled.

## III. Conclusion

Brown's Third Objection will be accepted. Brown's remaining objections will be overruled. The Report and Recommendation, as modified, will be accepted and adopted. Brown's Motion to Vacate, Set Aside, or Correct the Sentence under 28 U.S.C. § 2255 (ECF No. 201) will be denied. The action will be dismissed. A certificate of appealability ("COA") will be denied.[9]

---

in his Plea Agreement; (3) Brown knowingly waived his right to appeal any sentence below the statutory maximum and the sentence he received was below the statutory maximum; (4) Brown desired to obtain a sentence reduction by cooperating with the Government and pursuing an appeal would eliminate the possibility of a sentence reduction; and, (5) Brown had no viable issue to pursue on appeal. Given these circumstances, counsel's failure to consult with Brown about an appeal was not constitutionally deficient. See Flores-Ortega, 528 U.S. at 480, 484.

[9] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Brown fails to satisfy this requirement.

The Clerk is directed to send a copy of this Memorandum Opinion to Brown and counsel of record.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Date: _August 1, 2013_
Richmond, Virginia